768 P.2d 188

**JOHN C. LINCOLN HOSPITAL AND HEALTH CENTER, an Arizona corporation, Petitioner,**

**Attila S. Szokol, M.D., Intervenor–Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Robert L. Gottsfield, a judge thereof, Respondent Judge,**

**Sherry Lynn GIORDANO, an incapacitated person, by and through her next friend and natural father, Robert NIXON; Robert Nixon and Ivy Nixon, natural parents of Sherry Lynn Giordano, Real Parties in Interest.**

No. 1 CA–SA 88–166.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 12, 1989.

Review Denied March 7, 1989.

Fennemore, Craig, P.C. by R.C. Mitten, Timothy Berg, Phillip F. Fargotstein, John J. Balitis, Jr., Phoenix, for petitioner.

Leonard & Clancy, P.C. by James J. Leonard, Jr., Kenneth P. Clancy, Phoenix, for real party in interest.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Janet E. Kornblatt, Phoenix, for Dr. Szokol.

Weyl, Guyer, MacBan & Olson by Barry MacBan, Phoenix, for Phoenix Orthopedic Surgeons.

## OPINION

EUBANK, Judge.

This is a special action brought by John C. Lincoln Hospital and Health Center (Lincoln Hospital) from the trial court's determination permitting documents asserted to be protected under peer review privilege, A.R.S. §§ 36–445 *et seq.*, to be discovered.

Following oral argument on September 26, 1988, we took this matter under advisement. Then, on September 29, we entered our order permitting Dr. Attila S. Szokol to intervene and accepting jurisdiction of this special action. We ordered the clerk of the Maricopa County Superior Court to transmit under seal, for this court's *in camera* review, the documents which were the subject of the trial court's disclosure orders of June 22 and July 6, 1988, and which are described and discussed hereafter. These documents, except for the Quality Assurance Program Incident Report (Incident Report), were received. Following our conference, on November 4, 1988, we entered our order quashing the trial court's discovery order in two respects, and stated that our opinion would follow. This is that opinion.

## FACTS AND PROCEDURE

In the early part of 1986, Sherry Giordano (plaintiff) sustained injuries in an automobile accident. Plaintiff was admitted to Lincoln Hospital, where she was treated for injuries sustained in the accident. On March 29, 1986, while still in the hospital, a nurse employed by Lincoln Hospital entered into plaintiff's room to find that some of her vital organs had ceased functioning. After resuscitation, her organs began to function, but because of the incident brain damage had occurred.

Some time later, plaintiff through counsel filed an action in superior court against Lincoln Hospital and Dr. Szokol alleging medical negligence or malpractice pursuant to A.R.S. §§ 12–561 *et seq.* During discovery plaintiff sought production of various hospital records, reports, committee minutes and other documented material from Lincoln Hospital. Lincoln Hospital complied with some requests, but asserted peer review privilege under A.R.S. §§ 36–445 *et seq.* on other requests. Plaintiff thereafter filed a motion to compel. After an *in camera* inspection, the trial court determined that some of the items asserted to be privileged were in fact discoverable. The trial court ordered:

1. Denying Plaintiff's requests with respect to Items 13 (except for lab results 5/7/86 and 6/4/86 and "Communication," pg. 2 of 6/4/86), 14, and 15 as irrelevant and not leading to relevant or discoverable information.

\* \* \* \* \* \*

3. Disclosing Item 9 (not previously produced under claim of Privilege) as not privileged and could lead to relevant and discoverable information.

Lincoln Hospital moved that the trial court order all the documents contained in Items 9 and 13 to be sealed until a determination upon its discoverability could be obtained from this court pursuant to a review by special action.

Plaintiffs then initiated a second motion to compel requesting that an Incident Report prepared at Lincoln Hospital be likewise found discoverable. The trial court

granted plaintiff's motion. Lincoln Hospital then petitioned the trial court to also seal the Incident Report[1] until a special action on all the documents could be obtained. We now have these documents before this court.

### ISSUES

The issues presented are:

1. Were Items 9 and 13 properly found to be not protected under peer review privilege pursuant to A.R.S. §§ 36–445 *et seq.*; and

2. Is a Quality Assurance Program Incident Report a record which is protected under peer review privilege of A.R.S. §§ 36–445 *et seq.*

### DISPOSITION

■ The first issue presented to this court is whether Items 9 and 13 are subject to discovery. In request Item 9 the plaintiffs sought certain documents concerning defendant Dr. Szokol including: a. his application for staff privileges; b. his application for a position in any training program at Lincoln Hospital; c. any records reflecting hospital investigations into his application for staff privileges, including investigations into his background, work, and experience before his association with the Lincoln Hospital; d. documents indicating review or investigation of his work at Lincoln Hospital.

We may abbreviate our discussion of this item. We recently held such documents undiscoverable in *Humana Hospital v. Superior Court,* 154 Ariz. 396, 742 P.2d 1382 (App.1987), wherein this court denied discovery on the basis of the statutory privileges involved here. Although the *Humana* court did not rule directly on d. above, we are of the opinion that such documents are likewise *within the protection* confirmed by the statute. We affirm the *Humana* decision, and deem the material requested in Item 9 clearly protected under *Humana* and A.R.S. § 36–445.

■ Next, we turn to whether the documents listed in request Item 13 are subject to discovery. Item 13 sought production of all trauma/critical care committee minutes generated at Lincoln Hospital from February through September 1986. With peer review privilege being asserted, the trial court found it necessary to conduct an *in camera* review of the trauma/critical care committee minutes in question. After its inspection, the trial court found request Item 13 to be almost wholly protected under the peer review privilege. However, the trial court did order the production of two trauma/critical care committee minute records referred to as "lab results" and one trauma/critical care committee minute referred to as "communication." We now consider whether this determination by the trial court was proper.

These documents have been provided, and we find upon review that they were inappropriately ordered to be disclosed. We do not rule broadly that all committee minutes are exempted from disclosure by operation of A.R.S. § 36–445. Rather, we rule narrowly that these specific minutes fell within the statutory exemption. Without revealing the contents of the minutes, we may say that they reflect the trauma/critical care committee's discussion of operating room communications. One of the purposes of A.R.S. § 36–445 is to permit hospital committees to review such procedures free from the inhibiting concern that their discussions will be subject to discovery in litigation. See *Humana,* 154 Ariz. at 401, 742 P.2d at 1387 (the peer review process protected by the act includes "the discussions, exchanges, and opinions found in the committee minutes.") We believe that the minutes in question fall within the statutory ambit and are unavailable to the plaintiff or her counsel.

1. It should be noted that this court's record does not contain the actual Quality Assurance Program Incident Report in question; the parties have stipulated that a copy of the actual report was never provided to the trial court. The report form was provided in order for the trial court to make its determination. That form is in the record and indicates the general nature of the information to be reported, but not the precise information reported in the instant case.

Finally, this court is called upon to determine whether a hospital's Quality Assurance Program Incident Report, like the one produced by Lincoln Hospital,[2] is protected under peer review privilege of A.R.S. § 36–445. To resolve this question we once more turn to *Humana* for guidance. *Humana* held that personnel, administrative and other hospital records regarding doctors "which do not contain references to proceedings before medical investigative committees are not immune from discovery." *Id.* at 403, 742 P.2d at 1389.

The record indicates that Incident Reports are issued by hospital personnel in the regular course of providing medical care. These reports are intended for use whenever there is an unusual occurrence of any kind in the day-to-day administration of the hospital. Thus they are very broad in nature and cover situations as diverse as an electrical failure, a patient's loss of personal articles, and an incorrect type of anesthesia. Though Incident Reports sometimes precipitate peer review, they do not always do so, and they are not made solely for that purpose.

Evidence provided by the Nursing Quality Assurance Coordinator at Lincoln Hospital supports the conclusion that Incident Reports are not instances of peer review, but only occasional precipitants of peer review. She stated by affidavit that an Incident Report is forwarded by a departmental manager to the Vice President for Quality Assurance and that, "[f]ollowing review by the Vice President, the report would then be forwarded to the relevant medical staff committee for peer review of physicians, *if appropriate.*" (Emphasis added).

In *Humana* we stated that the Act "protects the peer review process itself—the discussions, exchanges and opinions found in the committee minutes. It does not protect otherwise discoverable factual information obtained from alternative sources." *Id.* at 401, 742 P.2d at 1387. *Humana* also holds that "the mere fact that a committee has obtained evidence does not render that evidence privileged if it was not previously privileged." *Id.* at 402–03, 742 P.2d at 1388–89. The record leads us to conclude that Incident Reports do not either constitute the "discussions, exchanges, and opinions" or "proceedings, records and materials prepared in connection with the review[s]"[3] which are the protected essence of peer review. They constitute only raw factual information which may trigger such discussions, exchanges and opinions. We accordingly conclude that the Incident Reports involved herein are not protected under A.R.S. § 36–445.

We therefore grant special action relief and quash that part of the trial court's order with regards to discovery of Items 9 and 13; however, the order allowing discovery of Lincoln Hospital's Quality Assurance Program Incident Report and other matters is affirmed; this matter is remanded to the trial court for further proceedings consistent with this opinion.

FIDEL, P.J., and JACOBSON, J., concur.

---

2. *See supra* note 1.

3. A.R.S. § 36–445.01(A)