No. 15-0094    -    *State of West Virginia ex rel. HCR ManorCare, LLC; HCR ManorCare, Inc.; MC Operations Investments, Inc.; HCRMC Operations, LLC; HCR ManorCare Operations II, LLC; HCR ManorCare Heartland, LLC; ManorCare, Inc.; HCR Healthcare, LLC; HCR Manor Care Services, Inc.; Health Care and Retirement Corporation of America, LLC; Heartland Employment Services, LLC; Joseph Donchatz; John Does 1 through 10; and Unidentified Entities 1 through 10 (as to Heartland of Charleston) v. The Honorable James C. Stucky, Judge of the Circuit Court of Kanawha County, West Virginia, and Tom Hanna, individually, and on behalf of the Estate and wrongful death beneficiaries of Sharon Hanna*

**FILED**

**June 9, 2015**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Justice, concurring, in part, and dissenting, in part:

The Petitioners asked this Court to require the circuit court to conduct an *in camera* review with respect to two sets of documents. The Petitioners argued that documents labeled Briefing Packets were protected from disclosure by the attorney-client privilege. The Petitioners also argued that documents labeled Center Visit Summaries were protected from disclosure by a peer review privilege. The majority opinion has granted relief to the Petitioners, in part, and denied relief, in part. With respect to disclosure of the Briefing Packets, the majority opinion has held that the circuit court must conduct an *in camera* review of those documents, consistent with *State ex rel. Nationwide Mutual Insurance Co. v. Kaufman*, 222 W. Va. 37, 658 S.E.2d 728 (2008), before ordering their disclosure. I concur in the majority opinion's resolution of this issue. However, the majority opinion further determined that the trial court did not exceed its jurisdiction in failing to conduct an

1

*in camera* review of the Center Visit Summaries,[1] and therefore denied relief. For the reasons set out below, I dissent from the majority opinion's resolution of the issue involving the Center Visit Summaries.

The Respondents in this case sought to discover Center Visit Summaries that the Petitioners claimed were protected from disclosure by the peer review privilege set out under W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2012).[2] In *State ex rel. Shroades v. Henry*, 187 W. Va. 723, 421 S.E.2d 264 (1992), this Court specifically addressed the procedure that should be followed when a peer review privilege is asserted.

*Shroades* was a medical malpractice case in which the plaintiff sought certain documents from the defendant hospital. The hospital claimed the documents were peer review documents that were protected from disclosure under W. Va. Code § 30-3C-3. The circuit court summarily agreed with the hospital and denied the plaintiff's request to compel disclosure of the documents. The plaintiff sought a writ of prohibition from this Court,

---

[1]The Center Visit Summaries were documents compiled by nurse consultants.

[2]The peer review privilege set out under W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2012) provides, in relevant part, as follows:

> The proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization[.]

2

thereby seeking access to the documents. This Court initially observed that "the circuit court declined to hold an in camera examination of the requested material[.]" *Shroades*, 187 W. Va. at 725, 421 S.E.2d at 266. The hospital argued before this Court "that the statute is so broad that it prohibits an *in camera* inspection of the requested material." *Id.* at 727, 421 S.E.2d at 268. We disagreed with the hospital and outlined the following procedure for determining whether the peer review privilege applied:

> In determining privilege, the circuit court should first determine from whom the material is sought and, then, if necessary, the origin of the material. In the present case, the requested materials are either identified by committee or by document. The materials identified by committee include reports and recommendations of the quality assurance committee, documents of the pharmacy and therapeutics committee, minutes of any special meeting concerning the incident, and agendas for medical staff meetings. In order to determine if materials identified by committee are privileged, the circuit court should examine City Hospital's by-laws to determine if the committee or organization is a "review organization" as defined in *W. Va. Code*, 30-3C-1 . . . .

> However when the by-laws do not clearly indicate that peer review is a function of the committee, the party asserting the privilege has the burden of presenting additional information. . . .

> . . . .

> In the present case, Ms. Shroades seeks the individual defendants' service records, personnel records, and evaluations. . . . On remand, in addition to submitting the requested documents for an *in camera* examination, City Hospital should identify the requested documents by name, date, custodian, source and reason for creation and if a record contains a document that City Hospital claims is privileged, the

3

> record with the document and its identification should be submitted to the circuit court.

*Id*. at 728-30, 421 S.E.2d at 269-71.

It is clear that *Shroades* requires a party to tender to the circuit court documentation supporting application of the peer review privilege, and that consideration of the privilege issue must be done *in camera*.

The requirement of an *in camera* review of documents allegedly protected by a statutory health care privilege is consistent with the law around the country. For example, in *Santa Rosa Memorial Hospital v. Superior Court*, 174 Cal. App. 3d 711, 220 Cal. Rptr. 236 (1985), a medical malpractice case, a hospital sought to prevent enforcement of a trial court order that required its employee to answer questions that would reveal allegedly privileged information. The hospital argued that proceedings and records of organized medical staff committees were not subject to discovery based upon a state statute. The appellate court agreed that a statute provided a privilege for certain hospital committee information. After finding that the trial court failed to make an inquiry into the hospital's privilege claim, the decision in the case addressed the proper procedure to be used when such a privilege is raised:

> Thus, when application of the statute to disputed discovery is not facially apparent, as will often be the case, the burden on the party resisting discovery ordinarily cannot be sustained except

> upon *judicial inquiry into the pertinent facts at an in camera hearing*. If it is revealed at such a hearing that only portions of a report or other document are derived from the work of a protected committee the court may order such portions excised and compel disclosure of the remainder.

*Santa Rosa*, 174 Cal. App. 3d at 727-28, 220 Cal. Rptr. at 247-48 (emphasis added). As previously mentioned, courts around the country have recognized the necessity for an *in camera* review of documents allegedly protected by a peer review privilege. *See John C. Lincoln Hosp. & Health Ctr. v. Superior Court In & For Cnty. of Maricopa*, 159 Ariz. 456, 458, 768 P.2d 188, 190 (1989) ("With peer review privilege being asserted, the trial court found it necessary to conduct an *in camera* review of the trauma/critical care committee minutes in question."); *Baptist Health v. Circuit Court of Pulaski Cnty.*, 373 Ark. 455, 457, 284 S.W.3d 499, 501 (2008) ("The court also stated that it would review *in camera* any of the prior fall material deemed by BHRI to be protected by the quality assurance or peer review statute."); *DeSantis v. Simon*, 209 P.3d 1069, 1072-73 (Colo. 2009) ("We hold that the trial court abused its discretion in this case by ordering the doctor to produce all of the documents listed in his privilege log, without first reviewing them in camera and conducting a *Martinelli* analysis."), *as modified on denial of reh'g*, (June 22, 2009); *Cape Canaveral Hosp., Inc. v. Leal*, 917 So. 2d 336, 339 (Fla. Dist. Ct. App. 2005) ("Generally, if there is a question as to whether certain discovery is protected by the peer review privilege, the trial court should hold an *in camera* inspection to determine if the materials are protected prior to compelling discovery."); *Sewell v. Cancel*, Nos. A12A1951 & A12A1952, 2015 WL

5

1432418, at *7 (Ga. Ct. App. Mar. 30, 2015) ("[T]he trial court ordered, [d]ocuments claimed to be subject to the medical peer review privilege, will be provided to the Special Master, *in camera*, for his review for him to make recommendations to the Court regarding the validity of the asserted privilege."); *Aga v. Hundahl*, 78 Haw. 230, 240, 891 P.2d 1022, 1032 (1995) ("In the instant case, because Appellants did not request an *in camera* inspection, the peer review summary was not preserved for review by this court."); *Ray v. St. John's Health Care Corp.*, 582 N.E.2d 464, 474 (Ind. Ct. App. 1991) ("The court should have conducted an *in camera* review on a document-by-document basis to determine whether the materials sought were protected by the peer review privilege."); *Carolan v. Hill*, 553 N.W.2d 882, 885 (Iowa 1996) ("On January 9, after an in camera review of the documents, the district court determined they were privileged as peer review documents."); *McFall v. Peace, Inc.*, 15 S.W.3d 724, 726 (Ky. 2000) ("After holding an *in camera* hearing regarding the discovery of the QAR form and other hospital documents, the trial court entered a protective order which found that the QAR form was protected by the peer review privilege."); *Kalemmullah v. Burdon*, 597 So. 2d 1019, 1020 (La. 1992) ("Case remanded to trial court for an in camera inspection of the requested documents and to delete those documents with peer review committee comments."); *Carr v. Howard*, 426 Mass. 514, 529, 689 N.E.2d 1304, 1313 (1998) ("In the medical peer review context, in camera review must be turned to only as a last resort, not as the first step in the discovery process. . . . Where interrogatories or the face of a motion to compel demonstrate that the records sought are

6

within the scope of the statutory privilege, no in camera review should be granted.”); *Harrison v. Munson Healthcare, Inc*., 304 Mich. App. 1, 26, 851 N.W.2d 549, 564 (2014) (“Thus, when a litigant challenges a hospital’s invocation of the peer-review privilege, an in camera evidentiary hearing is required.”), *overruled on other grounds by Krusac v. Covenant Med. Ctr., Inc*., No. 149270, 2015 WL 1809371 (Mich. Apr. 21, 2015) ; *Chardavoyne v. Cohen*, 56 A.D.3d 508, 509, 868 N.Y.S.2d 84, 86 (2008) (“The [trial court] should have conducted an in camera inspection of the documents responsive to the plaintiff’s request to enable it to determine which of the documents, or portions thereof, if any, are entitled to the statutory [peer review] privileges.”); *Medlin v. North Carolina Specialty Hosp., LLC*, 756 S.E.2d 812, 820 (N.C. Ct. App. 2014) (“[T]he determination of [peer review] privilege is a question of law which the trial judge must decide and *in camera* review of the evidence in question is proper.”); *Manley v. Heather Hill, Inc*., 175 Ohio App. 3d 155, 161-62, 885 N.E.2d 971, 975 (2007) (“Absent any evidence showing that there was in fact a peer-review committee or that the documents were prepared for peer-review purposes, we find that the trial court approached the manner cautiously by ordering an in camera inspection.”); *Arlington Mem’l Hosp. Found., Inc. v. Barton*, 952 S.W.2d 927, 930 (Tex. Ct. App. 1997) (“The affidavit, which alleged and proved the [peer review] privilege, along with the in camera submission, shifted the burden to Baird to either controvert the affidavit, show that the privilege was waived, or that the documents were made in the ordinary course of business.”); *Lisa D. v. Riendl*, 165 Wis. 2d 392, 478 N.W.2d 67 (1991) (unpublished table

7

decision) ("The court examined the remainder of the materials *in camera* and concluded that they were privileged as "peer review" materials.").

In the instant proceeding, the Petitioners repeatedly asked the trial court to hold an *in camera* proceeding to determine whether some of the Center Visit Summaries were protected from disclosure under W. Va. Code § 30-3C-3. The circuit court refused to hold an *in camera* proceeding as required by *Shroades* and courts around the country. The majority opinion erroneously concluded that the circuit court was not required to hold an *in camera* proceeding. Instead, the majority opinion found that the Petitioners failed to establish before the circuit court that they had a peer review organization as required by W. Va. Code § 30-3C-1. The majority opinion's finding on this issue is quite troubling.

The record is clear in showing that the Petitioners offered to supply the circuit court with additional information on the existence of a peer review organization. The circuit court inexplicably refused to accept any additional information. The majority opinion seems to suggest that the Petitioners did not timely offer to tender the information to the circuit court. Such an assertion is inconsistent with the record. It was not until the Respondents' motion to compel hearing on September 4, 2014, that the Respondents raised the issue of insufficient information to establish the existence of a peer review organization. When the matter became an issue, the Petitioners offered to address it. The circuit court should have

8

permitted the Petitioners to supply the information. In fact, the decision in *Shroades* expressly contemplated a party supplementing the record, if necessary, in order to show that a peer review organization exists. Specifically, *Shroades* stated that "when the by-laws do not clearly indicate that peer review is a function of the committee, the party asserting the privilege has *the burden of presenting additional information*." *Shroades*, 187 W. Va. at 729, 421 S.E.2d at 270 (emphasis added). It is quite clear that *Shroades* gave the Petitioners the *right* to provide additional information on the issue of the existence of a peer review organization. The circuit court and majority opinion arbitrarily stripped the Petitioners of that right. This arbitrary decision was simply wrong.

In view of the foregoing, I concur, in part, and dissent, in part.